# COMMERCIAL NOTE

$4,500,000.00                                                           February 2, 2023

FOR VALUE RECEIVED, the undersigned (the "Borrower") promises to pay to the order of MAINSTREET BANK, a Virginia banking corporation (hereinafter called "Bank," which term shall include any holder of this Note) without offset, at the Bank's office located at 10089 Fairfax Boulevard, Fairfax, Virginia 22030 (or at such other address as the Bank shall designate), the principal sum of Four Million Five Hundred Thousand and no/100 Dollars ($4,500,000.00), together with interest on the principal balance outstanding from time to time at the rate provided in this Note.

This Note is the "Note" referenced in the Credit Agreement.  Reference is hereby made to the Credit Agreement for provisions of this Note with respect to remedies on Default and other terms.

**Section 1.  Interest Rate**. This Note shall bear interest on the outstanding principal balance from time to time at a fixed rate per annum of six and thirty-four hundredths percent (6.34%). Upon the occurrence and during the continuation of a Default, the interest rate on this Note shall increase, without prior notice, to a fixed rate per annum of eleven and thirty-four hundredths percent (11.34%). Interest shall be computed on the basis of a 360-day year, counting the actual number of days elapsed.

**Section 2.  Payments.**  The Borrower agrees to pay this Note as follows:

(a)       During the Interest-Only Period, in consecutive monthly installments of interest only, beginning March 2, 2023, and continuing on the same day of each consecutive month thereafter, and on the Conversion Date; then

(b)       In consecutive monthly installments of principal and interest, each in an amount sufficient to amortize the amount of this Note on the Conversion Date over 300 months at the interest rate in effect, beginning March 2, 2025, and continuing on the same day of each consecutive month thereafter; provided, however,

(c)       the entire balance of principal, interest and fees on this Note shall be due and payable in full on February 2, 2028 (the "Maturity Date").

(d)       The Borrower authorizes and directs the Bank to debit its account number 2010154614 at the Bank for each payment when such payment is due.  The Borrower further authorizes and directs the Bank, upon the depletion of all funds in said account, to debit its account number 2010154673 at the Bank for each payment when such payment is due.

**Section 4.  Prepayment.**  The principal balance of this Note may be prepaid in whole or in part, by paying the amount to be prepaid, interest thereon and, except as set forth below, a prepayment penalty. The amount of the prepayment penalty shall be two percent (2.00%) of each principal

MainStreet - 225 N Charles - term note(101693274.2)

1

prepayment made during the term of this Note. Notwithstanding the foregoing, no prepayment penalty shall apply to any prepayment made from the Borrower's cash flow or internally generated funds, and not directly from financed sources. The Bank may, in its sole discretion, require the Borrower to produce reasonably satisfactory evidence of the direct source of any prepayment, as a condition to its waiver of the prepayment penalty. A partial prepayment of principal shall not affect the obligation of the Borrower to make subsequent scheduled principal payments at the times and in the amounts required until this Note is paid in full.

**Section 5. Defaults.** Each of the following events or conditions shall constitute a default ("Default") under this Note:

(a)    the failure to make any payment of principal, interest or any other amount due under this Note when such payment is due;

(b)    any default under the terms of any of the Loan Documents, or the failure to perform or observe any warranty, covenant, or other condition of any of the Loan Documents, and such default or failure continues for thirty (30) calendar days after the earlier to occur of (i) the date the bank notifies the Borrower thereof; and (ii) the date the Borrower should have notified the Bank thereof pursuant to Section 5.1(v) of the Credit Agreement;

(c)    any default by the Borrower or any indorser or guarantor of the payment of this Note with respect to any indebtedness to the Bank (other than this Note) or to any other creditor or obligee;

(d)    the death, incompetence, merger, consolidation, reorganization, dissolution, or termination of existence of any Party; or the pledge, lease or other disposition of all or substantially all of the assets of any Party; provided, however, that the Borrower shall have sixty (60) calendar days after the death of a Guarantor to provide the Bank with a substitute guarantor reasonably acceptable to the Bank and to cause said Person to execute and deliver to the Bank the Bank's form of guaranty, together with any other document or agreement reasonably required by the Bank;

(e)    any change, or any transaction which results or could result in, a Change in Control without the prior written consent of the Bank, which shall not be unreasonably withheld, conditioned or delayed;

(f)    the determination by the Bank that any warranty, representation, certificate, statement or information provided by any Party or any Person on behalf of a Party to the Bank in connection with any of the Loan Documents, or to induce the Bank to make or extend or modify the terms of the loan evidenced by this Note, was false or misleading, or that any Party or any Person on behalf of a Party failed to provide or disclose any facts or information, which failure rendered such warranty, representation, certificate, statement or information misleading;

(g)    the inability of any Party to pay its debts as they mature, the insolvency of any Party, the filing of a petition by or against any Party under the provisions of any bankruptcy, reorganization, arrangement, insolvency, liquidation or similar law for relief of debtors which remains un-

MainStreet - 225 N Charles - term note(101693274 2)

2

dismissed or un-stayed for a period of ninety (90) days or more, the appointment or application for appointment of any receiver for any Party or the property of any Party, the issuance or service of any attachment, levy, garnishment, tax lien or similar process against any Party or the property of any Party, the entry of a judgment against any Party which remains un-dismissed or un-stayed for a period of ninety (90) days or more, or an assignment for the benefit of creditors by any Party;

        (h)     any agreement or other document granting the Bank security for the payment of this Note shall cease for any reason to be in full force and effect as such security with the priority stated to be created thereby, or the grantor of such security shall contest the validity or enforceability of the security or deny that it has any further liability or obligation under such agreement or other document;

        (i)     any indorsement or guaranty of the payment of this Note shall cease for any reason to be in full force and effect, or any indorser or guarantor shall contest the validity or enforceability of the indorsement or guaranty or deny that it has any further liability or obligation under the indorsement or guaranty;

        (j)     the failure to provide information related to the Bank Secrecy Act including, but not limited to, all information with regards to the "beneficial owners" (as defined in regulations implementing said Act) of the Borrower, which failure continues for thirty (30) calendar days after the date the bank notifies the Borrower thereof; or

        (k)     the reasonable determination by the Bank that with respect to a Party, there has occurred a material adverse change in the business, condition (financial or otherwise), operations, performance, properties or prospects taken as a whole or prospects of such Party. The foregoing shall expressly exclude changes in general market conditions (however caused) such as (but not limited to) interest rates, real estate values, vacancy rates, absorption rates, employment rates and the rate of inflation or matters specifically addressed herein (such as casualty or condemnation).

        **Section 6. <u>Acceleration</u>.** At the option of the Bank, upon the occurrence of a Default as defined above, the full amount remaining unpaid on this Note shall become immediately due and payable without presentment, demand or notice of any kind; and the Bank may exercise any or all remedies available to it under applicable law and the Loan Documents.

        **Section 7. <u>Account Record</u>.** The Bank shall maintain records of the dates and amounts of payments of principal and interest, the date to which interest has been paid, accrued interest, the unpaid principal balance, and any other account information. Such records shall be maintained unilaterally by the Bank without notice to the Borrower and shall be presumed to be correct, provided, however, any failure of the Bank to maintain such records or any error therein or in any notice hereunder shall not in any manner affect the obligation of the Borrower to pay this Note in accordance with the terms hereof.

        **Section 8. <u>Immediately Available Funds</u>.** The principal of and interest on this Note shall be payable in immediately available funds in lawful money of the United States which shall be legal tender for public and private debts at the time of payment. The making of any payment in other than immediately available funds which the Bank, at its option, elects to accept shall be subject to collection,

and interest shall continue to accrue until the funds by which payment is made are available to the Bank for its use.

Section 9. **Adjustment to Billing Notice.** If, because the variable interest rate or the outstanding principal balance of this Note changes between the date of a billing notice and the end of a billing period, the actual amount due and payable is different from the amount billed, then the amount billed must be paid. The next following billing notice shall be adjusted by the amount of the difference, or a supplemental billing notice or rebate, as the case may be, shall be sent to the Borrower following the Maturity Date. A supplemental billing notice following the Maturity Date shall be immediately due and payable in full.

Section 10. **Application of Payments.** Payments will be applied to interest, principal due at the time of receipt of payment, late charges and other charges due at the time such payments are received, and outstanding principal, in that order. All payments shall be applied to satisfaction of scheduled payments in the order in which they become due.

Section 11. **Waiver.** The Borrower and any indorser of this Note (i) waive presentment, demand, protest and notice of dishonor and protest, (ii) waive the benefit of their homestead exemptions as to this debt, (iii) waive any right which they may have to require the Bank to proceed against any other Party or any collateral given to secure the payment of this Note, and (iv) agree that, without notice to the Borrower or any indorser and without affecting the liability of the Borrower or any indorser, the Bank, at any time or times, may grant extensions of the time for any payment due on this Note or any other indulgence or forbearance, release any Party from the obligation to make payments on this Note, permit the renewal of this Note, or permit the substitution, exchange or release of any security for this Note.

Section 12. **Late Charge; Attorneys' Fees.** If the Borrower fails to pay any amount due under this Note within 10 days of the date due (other than the payment due at maturity, whether by acceleration or otherwise), the Borrower shall pay to the Bank on demand a late charge equal to five percent (5%) of the amount due. The Borrower shall pay to the Bank on demand all costs incurred by the Bank, and reasonable attorneys' fees, in the collection or enforcement of this Note in the event of Default, whether or not suit is brought.

Section 13. **Set-off.** The Bank will have the right, in addition to all other remedies permitted by law (including, without limitation, other rights of set-off), to set off the amount now or hereafter due under this Note or due under any other obligation of the Borrower to the Bank against any and all accounts, credits, money, securities, or other property now or hereafter on deposit with, held by, or in the possession of the Bank to the credit or for the account of the Borrower, without notice to or consent by the Borrower. In addition to the right of set-off, to secure the payment of this Note the Borrower assigns and grants to the Bank a security interest in all accounts, credits, money, securities, or other property now or hereafter on deposit with, held by, or in the possession of the Bank to the credit or for the account of the Borrower.

Section 14. **Definitions.** The following terms, as used in this Note, have the following meanings:

MainStreet - 225 N Charles - term note(101693274.2)

4

"Change of Control" of a Person means (i) UIP Maryland Residential 6, LLC, a District of Columbia limited liability company ("UIP MD 6"), ceases to be the sole managing member of, or otherwise ceases to Control, the Borrower; (ii) Bonnell Realty, LLC, a Maryland limited liability company ("BRLLC") or Schwat Realty, LLC, a Maryland limited liability company ("SRLLC") ceases to be a managing members of, or otherwise ceases to Control, UIP MD 6; (iii) Peter Bonnell ceases to be the sole manager of, or otherwise cease to Control, BRLLC; or (iv) Steve Schwat ceases to be the sole manager of, or otherwise ceases to Control, SRLLC.

"Control" of a Person means the direct or indirect power to exercise a controlling influence over the management or policies of such Person, whether through the ownership of voting securities, by contract, or otherwise.

"Conversion Date" means February 2, 2025.

"Credit Agreement" means that certain Secured Credit Agreement of even date between the Borrower and the Bank, as said agreement may from time to time be modified, supplemented and replaced.

"Interest-Only Period" means the period of time from the date of this Note to and including the Conversion Date.

"Loan Documents" means this Note, the Credit Agreement, and any other instrument or agreement which now or hereafter evidences, governs, secures or guaranties the indebtedness evidenced by this Note, including any loan agreement, deed of trust, security agreement or guaranty, and all renewals, extensions and modifications thereof and substitutions therefor.

"Party" means the Borrower, any indorser or guarantor of this Note, any grantor or debtor giving security for this Note, and any other obligor on any of the Loan Documents.

"Person" means an individual, a corporation, a partnership, an association, a limited liability company, a trust or any other entity or organization.

### Section 15. Additional Terms.

(a) THE BORROWER IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY SUIT, ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS NOTE, WHETHER SUCH SUIT, ACTION, PROCEEDING, OR COUNTERCLAIM IS INSTITUTED BY THE BANK, THE BORROWER OR ANY OTHER PARTY.

(b) The Borrower and any indorser of this Note irrevocably (i) submit to the exclusive jurisdiction of the state courts of the Commonwealth of Virginia or the United States District Court for the Eastern District of Virginia (Alexandria Division) with respect to any suit, action, or proceeding relating to this Note, (ii) waive any objection which it may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such

MainStreet - 225 N Charles - term note(101693274 2)

suit, action, or proceeding brought in any such court has been brought in an inconvenient forum, (iii) waive the right to object that any such court does not have jurisdiction over it, and (iv) consent to the service of process in any such suit, action, or proceeding by the mailing of copies of such process to it by certified mail at the addresses indicated in this Note or at such other addresses of which the Bank shall have received notice. Nothing in this paragraph shall affect the Bank's right to serve process in any other manner permitted by law or to bring proceedings against the Borrower and indorsers in any other court having jurisdiction.

(c)    The proceeds of this Note shall be used to acquire or carry on a business, professional, investment, or commercial enterprise or activity.

(d)    The rights and remedies of the Bank under this Note, the other Loan Documents, and applicable law shall be cumulative and concurrent, and the exercise of any one or more of them shall not preclude the simultaneous or later exercise by the Bank of any or all such other rights or remedies. In the event any provision of this Note is held to be invalid, illegal, or unenforceable for any reason, then such provision only shall be deemed null and void and shall not affect any other provisions of this Note, which shall remain effective. No modification or waiver of any provision of this Note shall be effective unless it is in writing and signed by the Bank, and any such waiver shall be effective only in the specific instance and for the specific purpose for which it is given. The failure of the Bank to exercise its option to accelerate this Note as provided above, or to exercise any other option, right or remedy, in any one or more instances, or the acceptance by the Bank of partial payments or partial performance, shall not constitute a waiver of any Default, or the right to exercise any option, right or remedy at any time. The nouns, pronouns, and verbs used in this Note shall be construed as being of such number and gender as the context may require.

(e)    All notices, requests and other communications to a party hereunder shall be in writing and shall be given to such party at its address set forth in this Note or such other address as such party may hereafter specify for the purpose by notice to the other. Each such notice, request or other communication shall be effective (i) if given by mail, 48 hours after such communication is deposited in the mails with first class postage prepaid, addressed as aforesaid or (ii) if given by any other means, when delivered at the address specified in this paragraph. Each notice to Borrower shall also be given to Grossberg, Yochelson, Fox & Beyda, LLP, 1200 New Hampshire Avenue, NW, Suite 555, Washington, D.C. 20036-6814, Attn:  Michael D. Ravitch; provided, that the failure to provide any such notice to Grossberg, Yochelson, Fox & Beyda, LLP shall not render an otherwise proper notice to the Borrower ineffective.

(f)    This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

[SIGNATURE APPEARS ON THE FOLLOWING PAGE]

MainStreet - 225 N Charles - term note(101693274 2)

6

WITNESS the following signature and seal:

225 N CHARLES OWNER, LLC          [SEAL]
By:    UIP Maryland Residential 6, LLC,
       Its Managing Member
       By:    Bonnell Realty, LLC, its
              Managing Member

              By: _____
                  Peter Bonnell
                  Manager

       By:    Schwat Realty, LLC, its
              Managing Member

              By: _____
                  Steven Schwat
                  Manager

140 Q Street, N.E., Suite 140B
Washington, D.C. 20002

MainStreet - 225 N Charles - term note 4864-8709-7677 v.1

7

4854-1201-6461, v. 1

Docusign Envelope ID: 959C50DF-7F71-461C-8D25-ACA1A220FD23

# FIRST MODIFICATION AGREEMENT

THIS FIRST MODIFICATION AND EXTENSION AGREEMENT (this "Agreement"), effective as of the 2nd day of February 2025, is by and among MAINSTREET BANK, a Virginia banking corporation (the "Bank"); 225 N CHARLES OWNER, LLC, a Delaware limited liability company (the "Borrower"); and PETER BONNELL and STEVEN SCHWAT (the "Guarantors").

WITNESSETH THAT:

WHEREAS, the Bank is the owner and holder of that certain Commercial Note dated February 2, 2023, made by the Borrower and payable to the order of the Bank, in the original principal amount of Four Million Five Hundred Thousand and no/100 Dollars ($4,500,000.00) and bearing interest and being payable in accordance with the terms and conditions therein set forth (the "Note"); and

WHEREAS, the Note was issued pursuant to, and is subject to the terms and conditions set forth in, that certain Secured Credit Agreement dated February 2, 2023, between the Borrower and the Bank (the "Credit Agreement"); and

WHEREAS, as of the effective date hereof, the principal balance of the Note is $4,500,000.00 and the parties hereto desire to extend the interest-only period in the Note and to modify the terms thereof and of the Credit Agreement.

NOW, THEREFORE, for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      The "Interest-Only Period", as defined in the Note, is hereby extended to August 2, 2025.  The definition of "Conversion Date" in the Note is hereby changed to "August 2, 2025".

2.      Section 2(b) of the Note is hereby modified by replacing "March 2, 2025" with "September 2, 2025".

3.      The Bank's extension fee, in the amount of $22,500.00, and the Bank's legal fees, in the amount of $735.00, shall be paid to the Bank as part of this extension.

4.      The Borrower and the Guarantors hereby acknowledge and agree that, as of the effective date hereof, the unpaid principal balance of the Note is $4,500,000.00 and that there are no setoffs or defenses against the Note or the Credit Agreement.

5.      The Guarantors join in this Agreement for the purpose of signifying their consent hereto and acknowledge and agree that there are no setoffs or defenses against their guaranty and that their guaranty of the Note shall apply to the Note as modified hereby.

6.      The parties to this Agreement do not intend that this Agreement be construed as a novation of the Note or the Credit Agreement.

7.      Except as hereby expressly modified, the Note and Credit Agreement shall otherwise be unchanged, shall remain in full force and effect, and are hereby expressly approved, ratified and

MainStreet – 225 N. Charles – 1st modification (10784839.1)

Docusign Envelope ID: 959C50DF-7F71-461C-8D25-ACA1A220FD23

confirmed.  A legend shall be placed on the face of the Note indicating that its terms have been modified hereby, and the original of this Agreement shall be affixed to the original of the Note.

8.    This Agreement shall be governed in all respects by the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

WITNESS the following signatures and seals.

|  |  |
|---|---|
| | 225 N CHARLES OWNER, LLC        [SEAL] |
| | By:    UIP Maryland Residential 6, LLC, |
| | Its Managing Member |
| | By:    Bonnell Realty, LLC, its |
| | Managing Member |
| 140 Q Street, N.E., Suite 140B | |
| Washington, D.C. 20002 | |
| | By: _Peter J. Bonnell_____ |
| | Peter Bonnell |
| | Manager |
| | By:    Schwat Realty LLC, its |
| | Managing Member |
| | By: _Steven F. Schwat_____ |
| | Steven Schwat |
| | Manager |
| 4518 Drummond Avenue | |
| Chevy Chase, Maryland 20815 | |
| | _Steven F. Schwat_____ [SEAL] |
| | STEVEN SCHWAT |
| 531 T Street, N.W. #204 | |
| Washington, D.C. 20001-2086 | _Peter J. Bonnell_____ [SEAL] |
| | PETER BONNELL |
| | MAINSTREET BANK           [SEAL] |
| 10089 Fairfax Boulevard | |
| Fairfax, Virginia | |
| | By : Michael J Rudolph |
| | Michael J. Rudolph |
| | Executive Vice President |

- 2 -

Docusign Envelope ID: 491D0F1A-B17F-46AD-B7AB-4F0008A908D5

## SECOND MODIFICATION AGREEMENT

THIS SECOND MODIFICATION AGREEMENT (this "Agreement"), effective as of the 2nd day of August 2025, is by and among MAINSTREET BANK, a Virginia banking corporation (the "Bank"); 225 N CHARLES OWNER, LLC, a Delaware limited liability company (the "Borrower"); and PETER BONNELL and STEVEN SCHWAT (the "Guarantors").

WITNESSETH THAT:

WHEREAS, the Bank is the owner and holder of that certain Commercial Note dated February 2, 2023, made by the Borrower and payable to the order of the Bank, in the original principal amount of Four Million Five Hundred Thousand and no/100 Dollars ($4,500,000.00) and bearing interest and being payable in accordance with the terms and conditions therein set forth (as modified by that certain First Modification Agreement dated as of February 2, 2025, the "Note"); and

WHEREAS, the Note was issued pursuant to, and is subject to the terms and conditions set forth in, that certain Secured Credit Agreement dated February 2, 2023, between the Borrower and the Bank (the "Credit Agreement"); and

WHEREAS, as of the effective date hereof, the principal balance of the Note is $4,500,000.00 and the parties hereto desire to extend the interest-only period in the Note and to modify the terms thereof and of the Credit Agreement.

NOW, THEREFORE, for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    The "Interest-Only Period", as defined in the Note, is hereby extended to August 2, 2026.  The definition of "Conversion Date" in the Note is hereby changed to "August 2, 2026".

2.    Section 2(b) of the Note is hereby modified by replacing "September 2, 2025" with "September 2, 2026".

3.    The Bank's legal fees, in the amount of $735.00, shall be paid to the Bank as part of this extension.

4.    The Borrower and the Guarantors hereby acknowledge and agree that, as of the effective date hereof, the unpaid principal balance of the Note is $4,500,000.00 and that there are no setoffs or defenses against the Note or the Credit Agreement.

5.    The Guarantors join in this Agreement for the purpose of signifying their consent hereto and acknowledge and agree that there are no setoffs or defenses against their guaranty and that their guaranty of the Note shall apply to the Note as modified hereby.

6.    The parties to this Agreement do not intend that this Agreement be construed as a novation of the Note or the Credit Agreement.

7.    Except as hereby expressly modified, the Note and Credit Agreement shall otherwise be unchanged, shall remain in full force and effect, and are hereby expressly approved, ratified and

MainStreet – 225 N. Charles – 2nd modification (150116742.1)

Docusign Envelope ID: 491D0F1A-B17F-46AD-B7AB-4F0008A908D5

confirmed. A legend shall be placed on the face of the Note indicating that its terms have been modified hereby, and the original of this Agreement shall be affixed to the original of the Note.

8. This Agreement shall be governed in all respects by the laws of the Commonwealth of Virginia and shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

WITNESS the following signatures and seals.

225 N CHARLES OWNER, LLC        [SEAL]

By:     UIP Maryland Residential 6, LLC,
        Its Managing Member
        By:     Bonnell Realty, LLC, its
                Managing Member

140 Q Street, N.E., Suite 140B
Washington, D.C. 20002

                By: _____Peter J. Bonnell_____
                    Peter Bonnell
                    Manager

        By:     Schwat Realty LLC, its
                Managing Member

                By: _____Steven F. Schwat_____
                    Steven Schwat
                    Manager

4518 Drummond Avenue
Chevy Chase, Maryland 20815

_____Steven F. Schwat_____ [SEAL]
STEVEN SCHWAT

531 T Street, N.W. #204
Washington, D.C. 20001-2086

_____Peter J. Bonnell_____ [SEAL]
PETER BONNELL

MAINSTREET BANK        [SEAL]

10089 Fairfax Boulevard
Fairfax, Virginia

By: _____Mike Rudolph_____
    Michael J. Rudolph
    Executive Vice President

- 2 -
MainStreet – 225 N. Charles – 2nd modification (150116742.1)